IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JASON GATES,**  **PLAINTIFF**
**ADC #112574**

V.   NO. 4:23-CV-000758-LPR-ERE

**DEXTER PAYNE,** *et al*.   **DEFENDANTS**

### RECOMMENDED DISPOSITION

**I.   Procedure for Filing Objections:**

This Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. Your objections must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not object, you risk waiving the right to appeal questions of fact and Judge Rudofsky can adopt this Recommendation without independently reviewing the record.

**II.   Background:**

Pro se plaintiff Jason Gates, an Arkansas Division of Correction ("ADC") inmate housed at the Varner Unit, initially filed this lawsuit with a pleading labeled as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. *Doc. 2*. Mr. Gates' "petition" alleged that staff members had "denied [him] protection" from

gang members and were "turning a blind eye" to his need for protection. For relief, Mr. Gates requested to be transferred to a different unit "further away," where he could be housed in general population and have his normal privileges restored. *Doc. 2 at 5, 13, 17*.[1]

Because Mr. Gates' allegations related to the conditions of his confinement, not the fact or duration of his custody, the Court notified him that his claims were not cognizable in a habeas petition. *Doc. 5*. However, rather than dismiss the case, the Court gave Mr. Gates the opportunity to convert the case to a prisoner civil rights action under 42 U.S.C. § 1983. *Id.*

On September 5, 2023, Mr. Gates notified the Court that he wanted to convert the case and proceed under 42 U.S.C. § 1983. *Doc. 9*. The same day, Mr. Gates moved to amend and attached a proposed civil rights complaint to his motion. *Docs. 10, 10-1*. The following day, the Court granted Mr. Gates' motion to amend and instructed the Clerk to file Mr. Gates' proposed civil rights complaint as the operative complaint in this case. *Doc. 11*.

Mr. Gates' complaint includes additional allegations regarding his failure to protect claims. He sues Director Dexter Payne, Varner Unit Warden James Gibson, Varner Super Max Deputy Warden Brandon Carroll, and Classification Officer Flora

---

[1] In addition, Mr. has Gates filed a separate motion for preliminary injunction or temporary restraining order seeking an emergency order of protection. *Doc. 3*.

Washington, in both their individual and official capacities, and seeks declaratory, injunctive, and monetary relief.[2] *Doc. 12 at 2, 18*.

For the reasons explained below, Mr. Gates' claims should be dismissed for failure to state a plausible constitutional claim for relief.

### III. Discussion:

#### A. Standard

The Prison Litigation Reform Act requires federal courts to screen prisoner complaints, and to dismiss any claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a) & (b). When making this determination, a court must accept the truth of the factual allegations contained in the complaint, and it may consider documents attached to the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

In deciding whether Mr. Gates has stated a plausible claim for relief under § 1983, the Court must determine whether the allegations in the complaint, which are presumed true, "raise a right to relief above the speculative level." *Bell Atlantic*

---

[2] Mr. Gates requests that the Court order Defendants to place him in protective custody or "ship [him] to another unit's general population." *Doc. 12 at 18*. However, Mr. Gates has no constitutional right to be housed in a particular ADC unit. *Manthey v. Sabol*, 80 Fed. Appx. 538, *1 (8th Cir. 2003) (unpub. per curiam) (citing *Olim v. Wakinekona*, 461 U.S. 238, 245-48 (1983)).

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint cannot simply "[leave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." *Id.* at 561 (citation omitted). Rather, the facts set forth in the complaint must "nudge [the] claims across the line from conceivable to plausible." *Id.* at 570.

### B.  Mr. Gates' Allegations

The proposed constitutional claims Mr. Gates raises in this lawsuit arise solely from events that occurred at the Varner Unit.[3] However, Mr. Gates also describes events that took place at the Cummins Unit, before his transfer to the Varner Unit. This background information is relevant to understand Mr. Gates' allegations of wrongdoing at the Varner Unit, including *why* he feared for his safety there. The Court discusses events at the Cummins Unit solely for that purpose.[4]

#### 1.  Events at Cummins Unit

Mr. Gates' complaint alleges that, on January 20, 2023, while he was housed at the Cummins Unit, he "learned for the first time that a gang hit was placed on [his] life." *Doc. 12 at 4*. At that time, Mr. Gates personally removed himself from

---

[3] Mr. Gates does not name any ADC officers other than those from the Varner Unit in this lawsuit.

[4] While *pro se* complaints are entitled to a liberal construction, "they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (omitting citation).

his barracks. *Id*. Sgt. Baker (not a party to this lawsuit) then issued Mr. Gates a major disciplinary due to his failure to remain in his assigned housing area.[5] *Id*.

On February 16, Lt. James (not a party to this lawsuit) issued Mr. Gates another major disciplinary based on Mr. Gates' failure to return to general population. *Id. at 39*. Mr. Gates claims that "classification" assigned him back to general population "without written notice or a hearing from the classification committee."[6] *Id. at 4-5*.

On February 22, Mr. Gates appeared before the Classification Committee. At that time, Deputy Warden Pierce (not a party to this lawsuit) asked Mr. Gates why he refused to return to general population. *Id. at 6*. Mr. Gates told Deputy Warden Pierce that he "learned of a hit placed on [his] life."[7] *Id*.

On or around April 18, Mr. Gates allegedly attempted to commit suicide. At that time, he was placed in a holding cell. *Id. at 6*.

---

[5] The disciplinary paperwork attached to Mr. Gates' complaint suggests that this disciplinary was the result of Mr. Gates' refusal of a "direct order to submit to a urinalysis for drug detection." *Doc. 12 at 47*.

[6] The February 16, 2023 disciplinary papers attached to Mr. Gates' complaint indicate that Mr. Gates refused to sign the major disciplinary paper. *Id. at 39*.

[7] Mr. Gates alleges that at the February 22 hearing, Major Coleman told him that he was being labeled "his snitch" because "they" thought that he had told ADC officials about a contraband "drop." *Doc. 12 at 6*.
Mr. Gates does not name Major Coleman as a party Defendant. And the Court does not construe his complaint as proposing to pursue such a claim in this lawsuit, which is limited to alleged unconstitutional events that occurred after his transfer to the Varner Unit.

On May 3, Mr. Gates submitted a grievance requesting that he be placed in a one-man cell in protective custody. *Id*. at 49. On May 9, Lt. Dill (not a party to this lawsuit) responded that Mr. Gates was currently housed in a one-man cell. *Id*. at 6, 49.

On May 10, ADC officials transferred Mr. Gates to another one-man cell and placed him on behavior control based on his refusal to be housed with another inmate. *Id*. at 7.

On June 2, Mr. Gates filed a grievance stating that he felt like unidentified ADC officers had retaliated against him by holding him in "punitive isolation/behavior control cell." *Id*. at 8. Mr. Gates complained that ADC officials refused to provide him privileges to "other non-punitive restrictive housing inmates." *Id*.

On June 15, ADC officials transferred Mr. Gates to the Varner Super Max Unit. *Id*.

2. Events at Varner Unit

On June 20, Mr. Gates met with a classification officer for a hearing regarding his possible release to the Varner Unit, general population. *Id*.

On July 11, ADC officials released Mr. Gates to general population at the Varner Unit and placed him in 6 barracks. *Id*.

On July 17, Mr. Gates alleges that he "was approached by two (2) unknown

black males and was asked a few questions about why I was shipped from Cummins Unit." *Id. at 9*. Mr. Gates responded that he "was just up[] and shipped[,]" and the two unidentified inmates replied, "[D]on't worry about it[,] you'll be dealt with." *Id*. Mr. Gates "took this as them gaining knowledge in the gang hit placed on my life from Cummins Unit." *Id*.

At this point in time, Mr. Gates alleges he began to fear for his safety at the Varner Unit. Within an hour and a half, he told Lt. McCloud (not a party to this lawsuit) that he could not return to his assigned barracks because he had a "threat to [his] life." *Id*. An unknown sergeant then escorted Mr. Gates to the infirmary for pre-lock up. *Id. at 9-10*. Officers then escorted Mr. Gates to a cell in Isolation 1. *Id*. At that time, unknown officers allegedly confiscated Mr. Gates' personal property, including his sheets, blanket, and clothes pursuant to an ADC policy implemented by Defendant Gibson, Warden of the Varner Unit.[8] *Id. at 11*.

---

[8] It does not appear that Mr. Gates is attempting to pursue an Eighth Amendment inhumane conditions of confinement claim based on this confiscation of personal property. However, such a claim, if intended, would be subject to dismissal on screening. To plead such a claim, Mr. Gates must allege facts to show that: (1) objectively, he suffered an "extreme deprivation" that was "sufficiently serious" enough to deny him "the minimal civilized measure of life's necessities," or to pose "a substantial risk of serious harm" to his health or safety; and (2) subjectively, Defendants were deliberately indifferent to the risk of harm posed by the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).
 Mr. Gates' complaint fails to allege that any of the named Defendants either: (1) denied him any of life's necessities; or (2) disregarded an excessive risk to his health or safety. Mr. Gates' complaint that his blankets, sheets, and clothes were confiscated falls exceedingly short of alleging that he suffered an extreme deprivation even arguably violating his constitutional rights. Both the Eighth Circuit Court of Appeals and courts in this District have held that conditions far worse than those alleged here passed constitutional muster. See *Goldman v. Forbus*, 17 Fed. Appx. 487, 488 (8th Cir. 2001) (unpublished opinion) (six nights sleeping on the floor and being sprinkled with

On July 17, Lt. McCloud served Mr. Gates with a major disciplinary based on his failure to remain in his assigned housing area. *Id. at 11.* As a result of the disciplinary conviction: (1) Mr. Gates was assigned to punitive isolation for 28 days; and (2) his telephone, visitation, and commissary privileges were restricted for 60 days. *Id. at 11*. Defendant Gibson upheld Mr. Gates' disciplinary conviction. *Id.*

On July 24, Mr. Gates submitted an emergency grievance asking Defendants Gibson, Deputy Warden Brandon Carroll, and Classification Officer Washington to assign him to restrictive housing for his "protection" and requesting a transfer to another ADC unit. *Doc. 12 at 11, 20*

The same day, Mr. Gates alleges he received a response to his emergency grievance advising that he would be "seen and put up for release during a classification hearing." *Id. at 11-12*.

On August 14, 2023, the Warden found Mr. Gates' grievance without merit, explaining:

> You currently have no documented enemies at the Varner Unit, and

---

urine was not a constitutional violation); *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when a pretrial detainee was exposed to raw sewage for four days); *Williams v. Delo*, 49 F.3d 442, 444 (8th Cir. 1995) (four days without clothes, mattress, running water, bedding, mail, hot food, and hygienic supplies was not a constitutional violation); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (eleven days in an unsanitary cell did not amount to a constitutional violation); *Pillow v. Ryals*, No. 4:20-CV-222-DPM-JTR, 2020 WL 6445917, at *3 (E.D. Ark. Nov. 3, 2020), report and recommendation adopted, No. 4:20-CV-222-DPM, 2020 WL 7481999 (E.D. Ark. Dec. 18, 2020) ("six-day exposure to disgusting smells from an overflowing toilet, twenty-nine days without hot water in the sinks in his cell, exposure to water into his bunk from a leaking window when it rained, which required him to occasionally sleep on the floor, and a leaking sink" failed to establish a constitutional violation).

when Lieutenant McCloud inquired about the alleged threats on July 17, 2023, you refused to cooperate with her. You are currently appropriately assigned to Isolation 1 with active punitive restrictions, and your status will be reviewed by the Classification Committee upon completion of your restrictions. Because there is no evidence to support your allegation of a risk to your safety at the Varner Unit, I find this issue without merit.

*Id. at 21*.

On July 30, Mr. Gates wrote Defendants Gibson, Carroll, and Washington requesting their "help for protection." *Id. at 12*. Although Mr. Gates did not receive a response from Defendants Gibson and Carroll, Defendant Washington responded that Mr. Gates had "no documented enemies in Varner Unit population." *Id*.

On August 2, Mr. Gates again wrote Defendant Washington requesting "protection." *Id*. Mr. Gates did not receive any response. *Id*.

On August 9, other non-party ADC officers issued Mr. Gates a disciplinary for refusing to return to general population. *Id*. They explained that if Mr. Gates continued to refuse to return to general population, he would receive a disciplinary charge every 30 days.[9] *Id*.

On August 9, Mr. Gates wrote Defendant Payne's secretary notifying her of

---

[9] During this exchange Mr. Gates alleges that Sgt. Dunlap told him that "if you say anything else to me, I will make your back hit the floor." *Id. at 13*. However, Sgt. Dunlap is not named as a party in this lawsuit. In addition, "verbal threats do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985); see also *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under section 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail officials did not rise to the level of a constitutional violation).

the situation. *Id. at 13, 33*. Mr. Gates did not receive any response. *Id. at 13*.

On August 10, Mr. Gates again wrote Defendants Gibson, Carroll, and Washington. *Id*. On August 14, Defendant Gibson responded that Mr. Gates "didn't have any known enemies at the Varner Unit." *Id*.

On August 15, Lt. Compton (not a party to this lawsuit) came to Mr. Gates' cell. *Id*. He stated that Defendant Gibson sent him to inquire about the situation. *Id. at 14*. Mr. Gates told Lt. Compton that he needed "help and protection" based on the "hit placed on [his] life." *Id*. He requested that he be placed in a one-man cell in restrictive housing and "shipped away from this threat." *Id*.

On August 17, ADC officers issued Mr. Gates another major disciplinary for refusing to return to general population. *Id. at 13, 25*. As a result of the disciplinary conviction, Mr. Gates' telephone, visitation, and commissary privileges were restricted for 60 days. *Id. at 14-15, 27*.

On August 23, Mr. Gates attended a Warden's Review. *Id. at 15*. At that time, Defendant Gibson asked Mr. Gates why he refused to return to general population. *Id. at 16*. Mr. Gates "stated again about the gang hit that followed [him] from Cummins Unit (that's just one mile away) and that after just one (1) week in population [] at Varner [he] was approached by a couple unknown black inmates." *Id. at 16*. Defendant Gibson then asked whether any ADC officers had asked Mr. Gates to identify the inmates who allegedly threatened him. *Id*. Mr. Gates told

10

Defendant Gibson that no investigation was conducted. *Id*. Defendant Gibson then instructed Mr. Gates to return to general population and told Mr. Gates that he would receive a disciplinary charge each time he refused to return to general population. Defendant Carroll also told Mr. Gates, after he returned to general population, he could possibly identify the inmates who allegedly threatened him.[10] *Id*.

Mr. Gates explains that he remains housed in a "punitive/isolation cell." *Id. at 17*.

For relief in this case, Mr. Gates seeks an injunction reversing all past disciplinary violations and related punishments, prohibiting Defendants Payne, Gibson, Carroll, and Flora Washington from writing future disciplinaries, stopping "all harrassments [sic]" and "retaliations" from unidentified officers, placement in protective custody, and an order directing him to be placed in "another unit's general population." *Doc. 12 at 18*. Mr. Gates also seeks compensatory and punitive damages.

The Court construes Mr. Gates' complaint as attempting to assert claims that Defendants violated: (1) the Eighth Amendment by failing to protect him from harm by other inmates; and (2) the Due Process Clause by holding him in restrictive

---

[10] Mr. Gates alleges that, when Sgt. Dunlap escorted Mr. Gates to his cell, he stated, "we're going to have fun and take pleasure in writing your catch-out ass up." *Id. at 16-17*. Again, Sgt. Dunlap is not a party to this lawsuit, and verbal threats alone do not violate an inmate's constitutional rights. See FN 9, *supra*.

housing.[11]

## C.   Sovereign Immunity

A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Accordingly, Mr. Gates' claims for money damages against all Defendants in their official capacities are barred by sovereign immunity.

## D.   Failure to Protect Claim

The Eighth Amendment requires prison officials to protect convicted prisoners from violence at the hands of other prisoners, *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

To state a plausible claim that a defendant violated his right to protection, Mr. Gates must allege facts sufficient to show that: (1) objectively, he was incarcerated under conditions posing a substantial risk of serious harm; and (2) subjectively, each

---

[11] A pro se complaint must be liberally construed and held to less stringent standards than those drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, a pro se litigant must still allege facts sufficient to support the claims advanced. See, e.g., *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (explaining that liberal construction for pro se pleadings does not require "the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"); *Dunn v. White,* 880 F.2d 1188, 1197 (10th Cir.1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded."); *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir.1981) ("pro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law.").
 Where, as here, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. at 678–79 (2009) (cleaned up) (citations omitted).

defendant was "deliberately indifferent" to that risk. *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834). "The second requirement is a subjective test; a defendant must be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id*. (quoting *Farmer*, 511 U.S. at 837). Deliberate indifference describes a state of mind "akin to criminal recklessness." *Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021) (quoting *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009)). "This onerous standard requires a showing 'more than negligence, more even than gross negligence,' but less than "purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate[.]" *Thompson v. King*, 730 F.3d 742, 747 (8th Cir. 2013) (quoting *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008) (first quote) and *Schaub v. VonWald*, 638 F.3d 905, 914–15 (8th Cir. 2011) (second quote)).

Particularly relevant to Mr. Gates' claims, "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996). And an "official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

Finally, an inmate's general fear for his safety is insufficient to establish that

13

a defendant acted with deliberate indifference to substantial risk of serious harm. *See e.g.*, *Robinson v. Cavanaugh*, 20 F.3d 892, 895 (8th Cir. 1994) (an inmate's complaints regarding a "general fear for his safety" do not establish that a defendant "acted with deliberate indifference by not placing him in protective custody."); *Jones v. Wallace*, 641 Fed. Appx. 665 (8th Cir. 2016) (unpublished) (a general fear of another inmate is not sufficient to put guards on notice of a specific threat or danger).

Mr. Gates does not allege that he has suffered any harm at this time. Instead, he proposes to bring a failure to protect claim based on his subjective and general fear of harm from inmates that he refuses to identify.[12]

Based on the papers attached to Mr. Gates' complaint: (1) ADC officials have determined that Mr. Gates does not have any known enemies at the Varner Unit; (2) Mr. Gates has refused to cooperate with ADC officials to investigate the "threat" he received from two unidentified Varner inmates on July 17; and (3) since July 17, Mr. Gates has avoided placement in general population at the Varner Unit by refusing to comply with his housing assignment, but he has suffered disciplinary consequences including the loss of classification and privileges.

Mr. Gates fails to allege facts to support either prong of an Eighth Amendment

---

[12] In his motion seeking a preliminary injunction, Mr. Gates explains the "gang hit" threat at Cummins was "over a drug deal gone bad" and that's all he can say without "being labeled a snitch." *Doc. 3 at 4*.

claim. First, he fails to explain how the conditions of either his one-man cell in punitive isolation or his assignment to general population at the Varner Unit create a "substantial risk" of harm to him. He alludes to an ill-defined threat but does not allege that any particular inmate at the Varner Unit poses any specific, *substantial* risk to his safety.

Second, Mr. Gates fails to allege any facts to show that a named defendant: (1) knew of but ignored a substantial risk to his safety; or (2) failed to take reasonable steps to protect him.

In conclusion, Mr. Gates' conclusory allegations that he "needs protection" after two unidentified inmates made a vague comment to him shortly after he arrived at the Varner Unit fails to "nudge [his] claim . . . from conceivable to plausible." *Twombly*, 550 U.S. at 570. Accordingly, Mr. Gates' proposed failure to protect claim should be dismissed without prejudice.

### E. Due Process Claim

To state a Fourteenth Amendment due process claim, a prisoner "must first demonstrate that he was deprived of life, liberty, or property by government action." See *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). Here, the due process claim must be based on the denial of a liberty interest. Absent a constitutionally protected liberty interest, Mr. Gates has no cognizable claim for relief under § 1983.

In his complaint, Mr. Gates states that, as a result of the conviction for the

disciplinary charges at issue, he was assigned to restrictive housing and his telephone, visitation, and commissary privileges were revoked. *Doc. 5 at 8*. Such punishment is not severe enough to trigger a liberty interest entitling him to due process protections. See *Thornsberry v. Barden*, 854 F. App'x 105 (8th Cir. 2021) ("Thornsberry's assignment to isolation, loss of privileges, and reclassification were insufficient to state a due process claim."); *Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (inmate not deprived of liberty interest during nine months in administrative segregation); *Portley-El v. Brill*, 288 F.3d 1063, 1065-66 (8th Cir. 2002) (inmates have no liberty interest in maintaining a particular classification level; and thirty days in punitive segregation is not an atypical and significant hardship); and *Kennedy v. Blankenship*, 100 F.3d 640, 642-43 & n.2 (8th Cir. 1996) (placement in punitive isolation was not atypical and significant hardship despite restrictions in mail, telephone, visitation, commissary, and property privileges). Accordingly, Mr. Gates has failed to state a plausible due process claim.

**IV.** **Conclusion:**

IT IS THEREFORE RECOMMENDED THAT:

1. Mr. Gates' complaint be DISMISSED, without prejudice, based on his failure to state a plausible constitutional claim for relief.

2. Mr. Gates' motion for preliminary injunctive relief (*Doc. 3*) be DENIED, as moot.

3. The Clerk be instructed to close this case.

4. The Court certify that an in forma pauperis appeal of this dismissal would be frivolous and not taken in good faith.

5. In the future, this dismissal be considered a "strike" for purposes of 28 U.S.C. § 1915(g).

Dated 19 September 2023.

_____
UNITED STATES MAGISTRATE JUDGE